UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMIE SEAY, as personal representative of the Estate for HERBERT SEAY, deceased, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:18-cv-00161-TWP-DLP ) |
| CITY OF INDIANAPOLIS, et al. | ) ) |
| Defendants. | ) |

### Brief in Support of Defendants' Motion for Summary Judgment

This case arises from damages that Herbert Seay allegedly suffered when he was placed under arrest on January 14, 2016. Plaintiff claims that IMPD Officers Charles Parker, Eric Baker, Robert Rennaker, Daniel Greenwell, Thomas Shaffer, William Fishburn, Sandra Storkman, Erika Jones, Joshua Hasseld, Shawn Looper, Bradley Millikan, Michael Bruin, and Edward Fiscus ("Defendant Officers") actions and inactions were unreasonable to Seay's medical needs and constituted an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution. Plaintiff also claims that the City of Indianapolis is liable for these actions and inactions because they constituted negligence and resulted in Seay's wrongful death. Plaintiff's claims must fail because they lack evidentiary and legal support.

First, the claims against the Defendant Officers must fail because the Defendant Officers were not named in a timely manner or properly served before the applicable statute of limitations expired. Second, the Defendant Officers are entitled to qualified immunity because they did not violate any right that was clearly established on January 14, 2016. Third, the Defendant Officers did not fail to intervene in any constitutional violations. And fourth, the City of Indianapolis and its employees are immune from Plaintiff's state-law negligence and wrongful death claims under

the Indiana Tort Claims Act. Thus, Defendants are entitled to summary judgment on all Plaintiff's claims.

## I.      Statement of Material Facts Not in Dispute

### A.  Officers are dispatched.

At around 8:50 p.m. on January 14, 2016, Officers Eric Baker and Charles Parker were dispatched to check on the welfare of a 14-year old girl at 8737 Balboa Court. [Filing No. 61-1 (Ex. 1 - Certified Audio Records Log at p. 3); Filing No. 61-2 (Ex. 2 - Certified Audio Track 5 at 00:00-00:21).] Officers were then informed that the girl's mother was assaulted at 4126 Balboa Drive by a male suspect that was still at the residence. [Filing No. 61-1 (Ex. 1 - Certified Audio Records Log at p. 3); Filing No. 61-2 (Ex. 2 - Certified Audio Track 5 at 00:34-00:21).]

### B.  Officer Parker arrives, places Seay in handcuffs, and calls for an ambulance.

Officer Parker was the first officer to arrive at 4126 Balboa Drive. [Filing No. 61-3 (Ex. 3 – Parker Depo. at 6, lines 2-14).] He arrived about two or three minutes after he was dispatched. *Id*. at pp. 17-19, lines 12-6. When he arrived, he saw Seay standing next to the passenger side of a vehicle parked in the driveway. *Id*. at p. 6, lines 2-14; p. 12-18. Seay was crying and told Officer Parker that he wanted to kill himself. *Id*. at p. 6, lines 21-23; p. 8, lines 7-18.

Officer Parker placed Seay in handcuffs, sat him on the ground, and told him it would be okay. *Id*. at pp. 6-7, lines 22-3; p. 16, lines 17-20. He then requested that a medic, an evidence technician, and a domestic violence detective respond to the scene at around 8:55 p.m. *Id*. at p. 7, lines 8-20; pp. 17-18, lines 16-1; p. 19, lines 3-22. [Filing No. 61-1 (Ex. 1 - Certified Audio Records Log at p. 3); Filing No. 61-2 (Ex. 2 - Certified Audio Track 5 at 00:46-00:55).] Next, Seay told Officer Parker that he was having trouble breathing. [Filing No. 61-3 (Ex. 3 – Parker

Depo. at pp. 8-10, lines 2-19).] Officer Parker responded by telling Seay that medical professionals were on their way to the scene. *Id*. at pp. 23-24, lines 17-5.

### C.  Officer Baker arrives at the scene.

Officer Baker arrived at 4126 Balboa Drive at approximately 8:56 p.m. [Filing No. 61-3 (Ex. 3 – Parker Depo. at pp. 20-21, lines 21-22); Filing No. 61-4 (Ex. 4 – Baker Depo. at p. 22, lines 13-23).] When he arrived, he saw Officer Parker standing in the driveway and Seay sitting on the ground in handcuffs. [Filing No. 61-4 (Ex. 4 – Baker Depo. at p. 8, lines 20-24).]

### D.  Medics arrive at the scene.

An ambulance arrived approximately five minutes after Officer Parker requested medics. [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 13, lines 3-6).] Paramedic Valerie Powers and EMT Robert Keltner were the first medics to respond to 4126 Balboa Drive on January 14, 2016. [Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 7-8, lines 2-8).] When they arrived, Paramedic Powers headed towards the house to treat the woman Seay assaulted and EMT Keltner headed to Seay to treat him. *Id*. at pp. 11-13, lines 21-25; p. 50, lines 12-25. [Filing No. 61-3 (Ex. 3 – Parker Depo. at pp. 11-12, lines 4-13).] Paramedic Powers observed Seay before entering the house and did not see anything that suggested he was in distress. [Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 27-28, lines 1-14).] Officer Parker told the medics that Seay was having trouble breathing. [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 11, lines 16-21).] He then returned to his car to inform control dispatchers that the medics had arrived and to document which medics had arrived at 8:59 p.m. [Filing No. 61-1 (Ex. 1 - Certified Audio Records Log at p. 3); Filing No. 61-2 (Ex. 2 - Certified Audio Track 5 at 01:32-01:31); Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 20, lines 2-19); Filing No. 61-4 (Ex. 4 – Baker Depo. at pp. 25-26, lines 1-20).]

### E.  *Officer Greenwell arrives at the scene.*

Officer Greenwell went to 4126 Balboa Drive to see if Officers Baker and Parker needed assistance. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 5, lines 7-14).] When he arrived, Officer Parker was standing in the driveway, Seay was sitting on the driveway in handcuffs, and an ambulance was at the scene. *Id*. at p. 6, lines 7-12. Officer Greenwell agreed to watch Seay while Officer Parker checked on what was going on inside the house. *Id*. at pp. 9-10, lines 2-7.

When Seay told Officer Greenwell he was having trouble breathing, Officer Greenwell yelled for Officer Parker, who was inside the house, and told him to have the medics come outside to check on Seay. *Id*. at p. 12, lines 10-21; pp. 14-15, lines 19-18. Officer Greenwell did not notice that Seay's breathing was labored. *Id*. at p. 13, lines 4-6. Nevertheless, he asked them to check Seay out. *Id*. at p. 13, lines 7-13. Officer Greenwell recalls one medic coming out to check on Seay after Seay told him that he was having trouble breathing. *Id*. at p. 13, lines 14-18.

### F.  *A second ambulance is requested.*

Shortly after Paramedic Powers arrived at 4126 Balboa Drive, she learned that they needed a second ambulance because Seay and the patient inside the house needed to be transported and they could not be transported in the same ambulance. [Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 15-16, lines 24-22).] While EMT Keltner was inside the house communicating with Paramedic Powers, an officer informed them that Seay was having trouble breathing. [Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 32, lines 8-16).] EMT Keltner then exited the house to check on Seay. [Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 33, lines 1-14).] A second ambulance was then requested. [Filing No. 61-3 (Ex. 3 – Parker Depo. at pp. 12-13, lines 7-14; Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 52, lines 17-23).] Paramedic Powers recalls asking the officers to request a second transport. [Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 52,

lines 17-23).] Officers Parker and Greenwell recall the medics requesting a second ambulance. [Filing No. 61-3 (Ex. 3 – Parker Depo. at pp. 12-13, lines 7-14; Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 14, lines 3-8).] Certified audio proves a second ambulance was requested by a 911 operator while officers were in route to 4126 Balboa Drive on January 14, 2016. [Filing No. 61-1 (Certified Audio Records Log at p. 3); Filing No. 61-2 (Certified Audio Track 3).]

### G.  *A second ambulance arrives at the scene.*

The second ambulance was dispatched to 4126 Balboa Drive a few minutes after Paramedic Powers and EMT Keltner arrived at the scene. [Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 40-42, lines 24-3).] This second ambulance—Medic 44—was dispatched at 9:02 p.m. [Filing No. 1-2 at p. 69; Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 24-25, lines 16-12).] It arrived at 4126 Balboa Drive at 9:10 p.m. [Filing No. 1-2 at p. 69; Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 25, lines 5-9; p. 42, lines 20-23).] Just seconds later, its medics were with Seay. [Filing No. 1-2 at p. 69; Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 25, lines 10-12).]

When the second ambulance arrived, the medics from that ambulance took control of Seay and placed him on a gurney. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 12, lines 19-21).] They then took Seay to the ambulance. *Id*. at p. 16, lines 11-13. Since Seay was under arrest, an officer needed to follow the ambulance to the hospital. *Id*. at p. 16, lines 11-13.

Officer Parker informed control dispatchers that Medic 44 would be transporting Seay at approximately 9:16 p.m. [Filing No. 61-1 (Certified Audio Records Log at p. 3); Filing No. 61-2 (Certified Audio Track 5 at 02:00-02:09); Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 22, lines 5-23); Filing No. 61-4 (Ex. 4 – Baker Depo. at p. 25, lines 17-18).] He then informed control dispatchers that he would be following Medic 44 to the hospital after the medics told him that they needed to go at 9:23 p.m. [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 24-25, lines 6-12).]

However, the medics did not leave the scene after Seay was loaded into the ambulance. *Id*. at p. 23, lines 23-24. When Officer Greenwell went to check on Seay, he learned that he went into cardiac arrest inside the ambulance and the medics were working on him. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 16, lines 11-18).] Seay was pronounced dead shortly after Officer Greenwell checked on him. *Id*. at p. 16, lines 11-18.

> ### H.  *Seay was under medical supervision when he went into cardiac arrest.*

Undisputed facts establish that Seay went into cardiac arrest after Medic 44 arrived at the scene. [Filing No. 1-2 at p. 71; Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 25-27, lines 13-2).] Paramedic Powers testified that she knew that Seay did not go into cardiac arrest before Medic 44 arrived because she would have been outside with Seay if that happened. [Filing No. 61-5 (Ex. 5 – Powers Depo. at p. 44, lines 20-24).] Undisputed business records filed by the Plaintiff also indicate that Seay went into cardiac arrest after Medic 44 arrived. [Filing No. 1-2 at p. 71; Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 25-27, lines 13-2).] And undisputed testimony establishes that medics took control of Seay after Medic 44 arrived and they placed him in the ambulance. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 12, lines 19-21; p. 16, lines 11-13).]

> ### I.  *The officers relied on the medics to provide Seay the care he needed.*

When the medics checked on Seay, Officer Greenwell stepped back and gave them their space. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 13, lines 21-25).] Officer Parker testified that he was relying on the medics to provide care to Seay because "they're the medical people . . . when he told me he couldn't breathe, I got medics . . . ." [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 23, lines 15-20).] The officers did not know Seay's medical needs or the seriousness of his medical needs before he was loaded in the ambulance. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 6); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 6); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 6).] They

also did not know what medical treatment Seay requested before he was loaded into the ambulance. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 7); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 7); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 7).] Instead, they relied on the medical personnel at 4126 Balboa Drive to provide Seay with medical care because they are medical professionals and the officers had no reason to believe that they were not providing Seay with necessary medical treatment on January 14, 2016. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 8); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 8); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 8).]

### J.  The Defendant Officers were not served before October 12, 2018.

On January 5, 2018, Plaintiff Complaint was served on the City of Indianapolis and several parties not named as Defendants in Plaintiff's Amended Complaint. [Filing No. 1-2 at pp. 86-95.] The Defendant Officers did not receive notice of Plaintiff's initial complaint. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 5); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 5); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 5); Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶¶ 6-10); Filing No. 61-11 (Ex. 11 – Shaffer Aff. ¶¶ 6-10); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶¶ 6-10); Filing No. 61-13 (Ex. 13 – Storkman Aff. ¶¶ 6-10); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶¶ 6-10); Filing No. 61-15 (Ex. 15 – Hasseld Aff. ¶¶ 6-10); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶¶ 6-10); Filing No. 61-17 (Ex. 17 – Millikan Aff. ¶¶ 6-10); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶¶ 6-10); Filing No. 61-19 (Ex. 19 – Fiscus Aff. ¶¶ 6-10).] Thus, they were not served or put on notice of Plaintiff's claims until Plaintiff filed Plaintiff's Amended Complaint on October 12, 2016. Filing No. 27.

### K.  Three officers were at 4126 Balboa Drive when Seay was loaded in the ambulance.

Officer Greenwell testified that there were only three officers at 4126 Balboa Drive when Seay was loaded into the ambulance on January 14, 2016. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 30, lines 6-17).] These officers were Officers Baker, Parker, and Greenwell. [Filing

No. 61-3 (Ex. 3 – Parker Depo. at 6, lines 2-14); Filing No. 61-4 (Ex. 4 – Baker Depo. at p. 22, lines 13-23); Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 5, lines 7-14).] The remaining officers that comprise the Defendant Officers—Robert Rennaker, Thomas Shaffer, William Fishburn, Sandra Storkman, Erika Jones, Joshua Hasseld, Shawn Looper, Bradley Millikan, Michael Bruin, and Edward Fiscus—were not at the scene before Seay went into cardiac arrest in the ambulance and they were unable to provide him with any medical care before he went into cardiac arrest. [Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶¶ 4-5, 11-12); Filing No. 61-11 (Ex. 11 – Shaffer Aff. ¶¶ 4-5, 11-12); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶¶ 4-5, 11-12); Filing No. 61-13 (Ex. 13 – Storkman Aff. ¶¶ 4-5, 11-12); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶¶ 4-5, 11-12); Filing No. 61-15 (Ex. 15 – Hasseld Aff. ¶¶ 4-5, 11-12); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶¶ 4-5, 11-12); Filing No. 61-17 (Ex. 17 – Millikan Aff. ¶¶ 4-5, 11-12); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶¶ 4-5, 11-12); Filing No. 61-19 (Ex. 19 – Fiscus Aff. ¶¶ 4-5, 11-12).]

## II.   Standard of Review

"[A] district court must 'grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1068 (7th Cir. 2012). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings . . . together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* "[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of

8

summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. "Summary judgment is appropriate where . . . there is no genuine issue of material fact for trial . . . or . . . the non-moving party cannot establish an element essential to his claim on which he will bear the burden of proof at trial." *Beauchamp v. City of Noblesville, Ind*., 320 F.3d 733, 742 (7th Cir. 2003).

## III.   Argument

### A.   *Plaintiff's claims against the Defendant Officers must be dismissed.*

"Under federal law, a plaintiff may name a fictitious defendant and utilize discovery to learn the defendant's proper identity." *Mancini v. City of Indianapolis*, 2018 WL 4680188, at *8 (S.D. Ind. Sept. 28, 2018). "Although there is no prohibition on filing suit against unknown defendants, 'John Doe defendants must be identified and served within 120 days of the commencement of the action against them.'" *Id*. (quoting *Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995); see also Fed.R.Civ.P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant . . . ."). *See also Redd v. Dougherty*, 578 F.Supp.2d 1042, 1048 (N.D. ILL. 2008)).

Here, Plaintiff brought claims against the City of Indianapolis and officers that are not a party to Plaintiff's Amended Complaint on January 5, 2018. [Filing No. 1-2 at pp. 4-84.] If there were unknown officers that Plaintiff wanted to name as defendants, Plaintiff had until May 5, 2018 to identify those unknown officers, name them in Plaintiff's Amended Complaint, and serve those officers. However, Plaintiff did not move for leave to amend Plaintiff's Complaint until September 20, 2018—months after their deadline for serving unknown officers had expired. The Defendant Officers did not receive notice of Plaintiff's initial complaint. [Filing No. 61-7

(Ex. 7 – Baker Aff. ¶ 5); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 5); Filing No. 61-9 (Ex. 9 –

Parker Aff. ¶ 5); Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶¶ 6-10); Filing No. 61-11 (Ex. 11 –

Shaffer Aff. ¶¶ 6-10); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶¶ 6-10); Filing No. 61-13 (Ex.

13 – Storkman Aff. ¶¶ 6-10); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶¶ 6-10); Filing No. 61-15

(Ex. 15 – Hasseld Aff. ¶¶ 6-10); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶¶ 6-10); Filing No. 61-

17 (Ex. 17 – Millikan Aff. ¶¶ 6-10); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶¶ 6-10); Filing No.

61-19 (Ex. 19 – Fiscus Aff. ¶¶ 6-10).] Thus, they were not served or put on notice of Plaintiff's

claims until Plaintiff filed an Amended Complaint on October 12, 2016. Filing No. 27.

The statute of limitations that governs Section 1983 claims is "the period of limitations

adopted by the states for personal-injury suits." *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542

(7th Cir. 2009) (quoting *Wilson v. Garcia*, 471 U.S. 261 (1985)). Under Indiana Code § 34–11–

2–4, claims concerning personal injuries "must be commenced within two (2) years after the

cause of action accrues."

"There is no single accrual rule for all § 1983 claims. Rather, we use the rule that applies

to the common-law cause of action most similar to the kind of claim the plaintiff asserts."

*Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). "A Section 1983 claim accrues when the

plaintiff knows or has reason to know of the injury that is the basis of his action." *Sellars v.*

*Perry*, 80 F.3d 243, 245 (7th Cir. 1996). Plaintiff's claims accrued no later than January 15, 2016

because the Plaintiff knew or had reason to know of the injury that is the basis of this action on

that date. [Filing No. 61-20 (Ex. 20 – Seay Depo. at pp. 15-17, lines 8-16).] Plaintiff had two

years to bring Plaintiff's claims against the defendant officers. *Devbrow*, 705 F.3d at 767. Thus,

the statute of limitations on those claims expired no later than January 15, 2018. Nevertheless,

Plaintiff filed an amended complaint naming the defendant officers as parties for the first time on

October 12, 2018. This is 280 days after the statute of limitations expired. Thus, Plaintiff's claims against the defendant officers must be dismissed because they are time barred and not claims upon which relief may be granted. *See, e.g., Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (holding that "a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred").

Plaintiff's belated claims against the defendant officers do not relate back to the filing of Plaintiff's original complaint because there was no mistake as to the identification of the defendant officers. Rule 15(c) of the Federal Rules of Civil Procedure provides that an amended pleading relates back to the original pleading if it arises out of the same conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading. Fed. R. Civil P. 15(c)(1)(B). However, when the proposed amendment changes the party against whom the claims are asserted, the plaintiff must additionally show that the new defendant timely received notice of the original lawsuit and that the defendant knew, "but for a mistake concerning the proper party's identity" that it should have been named in the original action. Fed. R. Civil P. 15(c)(1)(C).

The Seventh Circuit has consistently held that the plaintiff must show both that an error was made concerning the proper party and that the new party is chargeable with knowledge of that mistake in order to change a party defendant and allow that change to relate back. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000). The requirement that the plaintiff show a mistake is an independent and separate inquiry from whether the newly added defendant had knowledge of the original lawsuit. *Id.* "In fact, in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule 15(c)(1) whether or not the purported substitute party knew or should have known that the action would have been brought

11

against him." *Dandridge v. Cook Cty.*, No. 12-CV-5458, 2013 WL 3421834, at *3 (N.D. Ill. July 8, 2013) (internal citation and quotation omitted).

A mistake, for purposes of relation back, is narrowly defined to reach only mistakes in identity, not mistakes as to which parties are or may be liable. *See Worthington v. Wilson*, 8 F.3d 1253, 1254 (7th Cir. 1993). In *Worthington*, a plaintiff brought a Section 1983 claim against three unknown police officers on the day that the statute of limitations for his claims expired. *Id.* The plaintiff later sought to amend his complaint to substitute the names of the unknown officers. *Id.* "The district court concluded that the relation back doctrine of Fed.R.Civ.P. 15(c) did not apply, and dismissed the amended complaint." *Id.* The Seventh Circuit affirmed the district court's decision. *Id.*

According to the Seventh Circuit, plaintiffs must establish that they made a mistake in order for an amended complaint to relate back to the date of an original complaint. *Id.* at 1256. "A legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15(c)(3)(B)[.]" *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 557 (7th Cir. 1996). However, "Rule 15(c)(3) . . . does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Worthington*, 8 F.3d at 1256.

In *Worthington*, the court noted that the plaintiff did not include the names of the police officers when he filed his complaint because he did not know the officers' names. *Id.* at 1257. The court held that plaintiff could not avail himself of the relation back doctrine of Rule 15(c) because his failure to name the defendants was due to a lack of knowledge, not a mistake. *Id.* Similarly, Plaintiff's claims do not relate back under the relation back doctrine of Rule 15(c) because Plaintiff's failure to name the defendant officers was not due to a mistake. Thus,

Plaintiff's claims against the defendant officers are untimely and subject to dismissal with prejudice.

### B. *The Defendant Officers are entitled to qualified immunity.*

All Defendant Officers are entitled to qualified immunity because none of them violated Plaintiff's clearly established rights. "Qualified immunity is an affirmative defense, and once raised, the plaintiff bears the burden of defeating it by showing: (1) the defendant violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "A failure to show either is fatal for the plaintiff's case." *Id.* (quoting *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

The Seventh Circuit recently held that, when multiple parties have asserted a qualified immunity defense, courts "must articulate an individualized analysis of such facts as applied to each defendant officer." *Estate of Williams by Rose v. Cline*, 902 F.3d 643, 652 (7th Cir. 2018). However, "[i]t is not the obligation of the court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation omitted). Rather, "our adversary system relies on parties to raise issues and present them in the appropriate manner." *Id.* at 191.

Since the Plaintiff bears the burden of defeating the Defendant Officers' qualified immunity defense—which all Defendant Officers are asserting—Plaintiff must conduct an individualized analysis of how the facts apply to each of the Defendant Officers and attempt to defeat each of the Defendant Officers' qualified immunity defense. *See Estate of Williams by Rose*, 902 F.3d at 652. Plaintiff cannot meet this burden. Thus, all Defendant Officers are entitled to qualified immunity.

1.      **The Defendant Officers did not violate Plaintiff's rights.**

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (*quoting White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id*. (*quoting Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "Although . . . caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quoting *White*, 137 S. Ct. at 551)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

According to the Court, "specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id*. (internal quotation marks omitted). Under the Fourth Amendment, a defendant is liable for providing inadequate medical care if the defendant's response to the plaintiff's medical need is objectively unreasonable. *Smith v. Adams*, 2019 WL 1542298, at *10 (S.D. Ind. Apr. 9, 2019) (citing *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006)). "Four factors inform our determination of whether an officer's response to [Plaintiff's] medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests,

including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Plaintiff "must also show that the defendants' conduct caused the harm of which [Plaintiff] complains." *Id.*

The Plaintiff cannot meet the first factor necessary for establishing the Defendant Officers' response to Plaintiff's medical needs was unreasonable because undisputed evidence establishes that none of the Defendant Officers had notice of Plaintiff's medical needs. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 6); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 6); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 6); Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶ 11); Filing No. 61-11 (Ex. 11 – Shaffer Aff. ¶ 11); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶ 11); Filing No. 61-13 (Ex. 13 – Storkman Aff. ¶ 11); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶ 11); Filing No. 61-15 (Ex. 15 – Hasseld Aff. ¶ 11); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶ 11); Filing No. 61-17 (Ex. 17 – Millikan Aff. ¶ 11); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶ 11); Filing No. 61-19 (Ex. 19 – Fiscus Aff. ¶ 11).]

The Plaintiff also cannot meet the second factor necessary for establishing the Defendant Officers' response to Plaintiff's medical needs was unreasonable because undisputed evidence establishes that none of the Defendant Officers had notice of the seriousness of Plaintiff's medical needs. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 6); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 6); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 6); Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶ 11); Filing No. 61-11 (Ex. 11 – Shaffer Aff. ¶ 11); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶ 11); Filing No. 61-13 (Ex. 13 – Storkman Aff. ¶ 11); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶ 11); Filing No. 61-15 (Ex. 15 – Hasseld Aff. ¶ 11); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶ 11); Filing No. 61-17 (Ex. 17 – Millikan Aff. ¶ 11); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶ 11); Filing No. 61-19 (Ex. 19 – Fiscus Aff. ¶ 11).]

Furthermore, the Plaintiff cannot meet the third factor necessary for establishing the Defendant Officers' response to Plaintiff's medical needs was unreasonable because undisputed evidence establishes that none of the Defendant Officers had notice of the scope of Plaintiff's requested treatment. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 7); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 7; Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 7); Filing No. 61-10 (Ex. 10 – Rennaker Aff. ¶ 12); Filing No. 61-11 (Ex. 11 – Shaffer Aff. ¶ 12); Filing No. 61-12 (Ex. 12 – Fishburn Aff. ¶ 12); Filing No. 61-13 (Ex. 13 – Storkman Aff. ¶ 12); Filing No. 61-14 (Ex. 14 – Jones Aff. ¶ 12); Filing No. 61-15 (Ex. 15 – Hasseld Aff. ¶ 12); Filing No. 61-16 (Ex. 16 – Looper Aff. ¶ 12); Filing No. 61-17 (Ex. 17 – Millikan Aff. ¶ 12); Filing No. 61-18 (Ex. 18 – Bruin Aff. ¶ 12); Filing No. 61-19 (Ex. 19 – Fiscus Aff. ¶ 12).]

The Plaintiff also does not have evidence that would suggest that Defendant Officers' response to Plaintiff's medical needs was unreasonable under the fourth factor used to determine whether their actions was objectively unreasonable. Indeed, the Defendant Officers had police interests, including administrative, penological, or investigatory concerns when Plaintiff was being treated by medics at 4126 Balboa Drive. Nevertheless, none of the Defendant Officers relied on their police interests to deny or interfere with Plaintiff's medical treatment. Instead, when the medics checked on Seay, Officer Greenwell stepped back and gave them their space. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 13, lines 21-25).] Officer Parker testified that he was relying on the medics to provide care to Seay because "they're the medical people . . . when he told me he couldn't breathe, I got medics . . . ." [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 23, lines 15-20).] They relied on the medical personnel at 4126 Balboa Drive to provide Seay with medical care because they are medical professionals and the officers had no reason to believe that they were not providing Seay with necessary medical treatment on January 14, 2016.

[Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 8); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 8); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 8).] Thus, their actions were not unreasonable under the Fourth Amendment.

The Plaintiff's Fourth Amendment claim must also fail because Plaintiff cannot "show that the [Defendant Officers'] conduct caused the harm of which [Plaintiff] complains." *Ortiz*, 656 F.3d at 530. There is no evidence that anything that the Defendant Officers did delayed the treatment that Plaintiff received by even a fraction of a second. Instead, the undisputed facts establish that both ambulances that responded to 4126 Balboa Drive were requested by a 911 operator while the officers were in route to the scene. [Filing No. 61-1 (Certified Audio Records Log at p. 3); Filing No. 61-2 (Certified Audio Track 3).] An ambulance arrived within minutes of officers being dispatched to the scene. [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 13, lines 3-6).] When that ambulance arrived, EMT Keltner headed to Seay to treat him. *Id.* at pp. 11-13, lines 21-25; p. 50, lines 12-25. [Filing No. 61-3 (Ex. 3 – Parker Depo. at pp. 11-12, lines 4-13).] Paramedic Powers also observed Seay before entering the house and did not see anything that suggested he was in distress. [Filing No. 61-5 (Ex. 5 – Powers Depo. at pp. 27-28, lines 1-14).] And undisputed evidence establishes that Officer Parker told the medics that Seay was having trouble breathing. [Filing No. 61-3 (Ex. 3 – Parker Depo. at p. 11, lines 16-21).] All of this happened within the first 10 minutes of officers being dispatched to 4126 Balboa Drive. [Filing No. 61-1 (Ex. 1 - Certified Audio Records Log).]

Recently, this Court granted officers summary judgment under similar circumstances because those officers "did not impede or deny medical care to [a plaintiff]." *Smith v. Adams*, 2019 WL 1542298, at *10 (S.D. Ind. Apr. 9, 2019). In *Smith*, a plaintiff was brought to a hospital within an hour of being tasered. *Id.* "The video and audio evidence reflect that medical staff was

informed that Mr. Smith had been shot at and tasered and that none of the officers impeded the staff from communicating with and treating Mr. Smith." *Id*. There, "[n]o officers rushed any medical staff in their evaluation and examination. Nor [was] there any evidence that the officers were aware that there was still a taser prong in Mr. Smith's back after the medical visit." Based upon those facts, this Court held that "[s]ummary judgment in the defendants' favor is warranted." *Id*.

Just as in *Smith*, there is no evidence that the Defendant Officers delayed the treatment that Plaintiff received. Instead, certified audio establishes that both medics were requested by a 911 operator and Officer Parker attempted to request a medic within minutes of being dispatched to the scene. There is also no evidence controverting the officers' testimony that they told medics that Seay had mentioned that he was having trouble breathing. And there is no evidence controverting the officers' testimony that they gave the medics space while they were treating Plaintiff and did not interfere with that treatment. Thus, just as summary judgment was warranted in *Smith*, summary judgment is warranted in this case.

### 2.     The Defendant Officers did not violate a right that was clearly established on January 14, 2016.

"The plaintiff bears the burden of overcoming a claim to qualified immunity by 'demonstrat[ing] that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate'" or that the conduct was "'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" *Johnson*, Case No. 1:16-cv-02705-JMS-MPB, Document 144 at p. 23 (quoting *Dockery v. Blackburn*, 911 F.3d 458, 466-67 (7th Cir. 2018) (first quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), then quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 723-24 (7th Cir. 2013)). Defendants contend that this Court's recent decision in *Smith*

18

"squarely demonstrates that no clearly established law precluded [Defendant Officers'] conduct at the time in question." *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). Thus, Plaintiff should be required to show that the Defendant Officers' conduct was materially different from the conduct at issue in *Smith* to defeat the Defendant Officers' qualified immunity defense. *Id*. at 779–80.

If anything, the undisputed facts show that the Defendant Officers' conduct makes them far less culpable than the officers who were granted summary judgment in *Smith*. There, it took the officers an hour to get the plaintiff medical treatment. Here, Plaintiff received medical treatment within 10 minutes of the officers being dispatched. When discussing an hour delay in an Eighth Amendment context, the Seventh Circuit has noted "the public often waits longer at hospital emergency rooms." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). Under the Eighth Amendment, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996). It is unclear whether Plaintiff faces a similar burden on Plaintiff's Fourth Amendment claim. However, Plaintiff must establish that Defendant Officers were on notice that this standard did not apply to Plaintiff's claims. There is simply no evidence that the Defendant Officers had such notice. Thus, Plaintiff is unable to establish that Defendant Officers violated his clearly established rights. The Defendant Officers are, therefore, entitled to qualified immunity.

### 3.   None of the Defendant Officers failed to intervene in a constitutional violation on January 14, 2016.

"Liability under section 1983 requires a finding that the defendant caused the constitutional deprivation at issue, such that he [or she] was 'personally involved or acquiesced

19

in the alleged constitutional violation.'" *Patterson v. Burns*, 670 F. Supp. 2d 837, 849 (S.D. Ind. 2009) (citing *Kelly v. Mun. Courts of Marion County*, 97 F.3d 902, 909 (7th Cir.1996)). "A claimant must establish a 'causal connection[ ] or an affirmative link' between the defendant and the alleged conduct, *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), but need not show that the defendant directly participated in the violation, *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986)." *Id.* "A person acting under color of state law can be liable if he acts or fails to act in deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id.* (citing *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982)).

"In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ." *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). Plaintiff's rights were not violated. Thus, none of the Defendant Officers may be held liable for failing to intervene in any constitutional deprivation.

However, even if the Plaintiff could establish that the Plaintiff's rights were violated, which they were not, there is no evidence that establishes that any of the Defendant Officers acted or failed to act in deliberate or reckless disregard of plaintiff's constitutional rights, or that the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. Indeed, 10 of the 13 Defendant Officers were not even present at 4126 Balboa Drive before the Plaintiff went into cardiac arrest. Officer Greenwell testified that there were only three officers at 4126 Balboa Drive when Seay was loaded into the ambulance on January 14, 2016. [Filing No. 61-6 (Ex. 6 – Greenwell Depo. at p. 30, lines 6-17).] The other 10 Defendant Officers—Robert Rennaker, Thomas Shaffer, William Fishburn, Sandra Storkman,

Erika Jones, Joshua Hasseld, Shawn Looper, Bradley Millikan, Michael Bruin, and Edward Fiscus—had no opportunity to intervene in anything that happened at the scene before Plaintiff was placed in the ambulance where he went into cardiac arrest. Thus, they cannot possibly be held liable for failing to intervene in any constitutional violation.

As for the three officers that were at the scene—Officers Baker, Greenwell, and Parker—there is no evidence that any of them acted or failed to act in deliberate or reckless disregard of plaintiff's constitutional rights, or that the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent. Indeed, their undisputed testimony establishes that they did not know Seay's medical needs or the seriousness of his medical needs before he was loaded in the ambulance. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 6); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 6); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 6).] They also did not know what medical treatment Seay requested before he was loaded into the ambulance. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 7); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 7); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 7).] Instead, they had no reason to believe that they were not providing Seay with necessary medical treatment on January 14, 2016. [Filing No. 61-7 (Ex. 7 – Baker Aff. ¶ 8); Filing No. 61-8 (Ex. 8 – Greenwell Aff. ¶ 8); Filing No. 61-9 (Ex. 9 – Parker Aff. ¶ 8).] Thus, none of the Defendant Officers failed to intervene in any constitutional violation. The Defendant Officers are, therefore, entitled to summary judgment on all federal claims.

**C.    Plaintiffs' state-law claims must fail.**

If this Court grants summary judgment on Plaintiff's federal claims, it may, and should, retain jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a). "When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law

claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc*., 672 F.3d 476, 478 (7th Cir. 2012) This presumption may be displaced "when it is absolutely clear how the pendent claims can be decided." *Id.* at 480. This Court to retain jurisdiction and grant summary judgment on Plaintiff's state-law claims because it is absolutely clear how those claims should be decided.

The Indiana Tort Claims Act ("ITCA") governs tort claims against governmental entities and public employees. *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014); Ind. Code 34-13-3. Under ITCA, a governmental defendant is personally immune from liability for acts or omissions within the scope of his employment. Ind. Code § 34-13-3-5(b). Therefore, only the City of Indianapolis may be held liable for Plaintiff's state-law claims on the theory of *respondeat superior. See Ballheimer v. Batts*, 2019 WL 1243061 at *12 (S.D. Ind. March 18, 2019).

Under ITCA, the City and its employees acting within the scope of their employment are generally not liable if a loss results from the enforcement or failure to enforce the law. Ind. Code § 34-13-3-3(8). Commonly referred to as "law enforcement immunity," the Indiana Supreme Court has said that "what is 'required to establish immunity [is] that the activity be one in which government either compels obedience to laws, rules, or regulations or sanctions or attempts to sanction violations thereof.'" *F.D. v. Ind. Dep't of Child Serv.*, 1 N.E.3d 131, 138 (Ind. 2013). There are only limited exceptions to ITCA's law enforcement immunity. For instance, the City and its officers are not immune from suit if the enforcement or failure to enforce the law constitutes false arrest or false imprisonment. *Id*. The Indiana Supreme Court has held that law enforcement immunity also "does not shield the government from liability for excessive force by police." *Wilson v. Isaacs*, 929 N.E.2d 200, 204 (Ind. 2010).

Here, the Defendant Officers that were present at 4126 Balboa Drive—Officers Baker, Greenwell, and Parker—were clearly investigating criminal conduct when Plaintiff was receiving medical treatment at 4126 Balboa Drive. Indeed, they were dispatched to the scene to respond to an allegation that a suspect had committed domestic battery. And they were exposed to evidence that gave them probable cause to believe that Seay had battered someone on January 14, 2016. Since the Defendant Officers were plainly attempting to enforce the law, the City and its officers are immune from suit on Plaintiff's negligence claim under Indiana Code § 34-13-3-3(8).

Furthermore, as this Court has correctly held, "[l]aw enforcement immunity under the ITCA applies to [an] Estate's wrongful death claim . . . ." *Cento v. Marion Cty. Sheriff's Office*, 2018 WL 3872221, at *5 (S.D. Ind. Aug. 15, 2018). Thus, Plaintiff's wrongful death claim is barred. This Court should therefore retain jurisdiction over Plaintiff's state-law claims and grant the Defendants summary judgment on those claims because it is clear how those claims must be decided. *RWJ Mgmt. Co*., 672 F.3d at 480.

## IV.   Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant them summary judgment on all Plaintiff's claims and all other relief that is just and proper.

Respectfully submitted,

 /s/ Andrew J. Upchurch
Andrew J. Upchurch (30174-49)
Deputy Chief Litigation Counsel
Office of Corporation Counsel
200 East Washington Street, Room 1601
Indianapolis, Indiana  46204
Telephone: (317) 327-4055
Fax:  (317) 327-3968
E-Mail: andrew.upchurch@indy.gov

## CERTIFICATE OF SERVICE

I hereby certify that June 5, 2019, a copy of the foregoing was filed electronically.

Service of this filing will be made on all ECF-registered counsel by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

Richard A. Waples
WAPLES & HANGER
410 N. Audubon Road
Indianapolis, IN 46219

John F. Kautzman
Andrew R. Duncan
Edward J. Merchant
Martin A. Brown
Ruckelshaus, Kautzman, Blackwell & Bemis, LLP
135 N. Pennsylvania St., Suite #1600
Indianapolis, Indiana 46204

/s/ Andrew J. Upchurch
Andrew J. Upchurch (30174-49)
Deputy Chief Litigation Counsel

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Fax: (317) 327-3968
andrew.upchurch@indy.gov