UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TAMIE SEAY, as personal representative of the Estate of HERBERT SEAY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. 1:18-cv-00161-TWP-DLP |
| CITY OF INDIANAPOLIS, CHARLES PARKER, ERIC BAKER, ROBERT RENNAKER, DANIEL GREENWELL, THOMAS SHAFFER, WILLIAM FISHBURN, SANDRA STORKMAN, ERIKA JONES, JOSHUA HASSELD, SHAWN LOOPER, BRADLEY MILLIKAN, MICHAEL BRUIN, and EDWARD FISCUS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants the City of Indianapolis, Charles Parker, Eric Baker, Robert Rennaker, Daniel Greenwell, Thomas Shaffer, William Fishburn, Sandra Storkman, Erika Jones, Joshua Hasseld, Shawn Looper, Bradley Millikan, Michael Bruin, and Edward Fiscus (collectively, "Defendants") (Filing No. 60). *Pro se* plaintiff Tamie Seay ("Plaintiff"), as the personal representative of the Estate of Herbert Seay ("Seay"), filed an Amended Complaint against the Defendants for claims of violation of the Fourth Amendment, as well as negligence and wrongful death, after Seay died while in police custody. For the following reasons, the Court **grants** the Defendants' Motion.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiff as the non-

moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.      **Factual Background**

On January 14, 2016, at approximately 8:50 p.m., Indianapolis Metropolitan Police Department ("IMPD") Officers Eric Baker ("Officer Baker") and Charles Parker ("Officer Parker") were dispatched to check on the welfare of a 14-year old girl at 8737 Balboa Court, Indianapolis, Indiana. After being dispatched, Officer Baker and Officer Parker were informed that the girl's mother was assaulted nearby at 4126 Balboa Drive by a male suspect who was still at the residence. (Filing No. 61-1 at 3; Filing No. 61-2 (Certified Audio Track 5 at 00:00–00:46).)

Officer Parker was the first officer to arrive at 4126 Balboa Drive, approximately two or three minutes after he was dispatched. Upon arrival, he saw Seay standing next to the passenger side of a vehicle parked in the driveway. Seay was crying and told Officer Parker that he wanted to kill himself and that he just wanted to die. Officer Parker placed Seay in handcuffs, sat him on the ground, and tried to calm him. At approximately 8:55 p.m., Officer Parker requested that a medic, an evidence technician, and a domestic violence detective respond to the scene. Seay told Officer Parker that he was having trouble breathing, and Officer Parker responded by telling Seay that medical professionals were on their way to the scene. (Filing No. 61-3 at 6–8, 16–19, 23; Filing No. 61-1 at 3; Filing No. 61-2 (Certified Audio Track 5 at 00:46–00:55).)

At approximately 8:56 p.m., Officer Baker arrived on the scene. When he arrived, he saw Officer Parker standing in the driveway with Seay sitting on the ground in handcuffs. (Filing No. 61-1 at 3; Filing No. 61-3 at 20; Filing No. 61-4 at 7, 14.) An ambulance arrived approximately five minutes after Officer Parker requested medics. Paramedic Valerie Powers ("Paramedic Powers") and EMT Robert Keltner ("EMT Keltner") were the first medics to arrive at the scene.

2

When they arrived, Paramedic Powers headed toward the house to treat the woman Seay had assaulted, and EMT Keltner headed toward Seay to attend to him. Paramedic Powers quickly observed Seay as she went toward the house, and she did not see anything that suggested Seay was in distress. Officer Parker told the medics that Seay was having trouble breathing. Then Officer Parker returned to his car at 8:59 p.m. to inform control dispatchers that the medics had arrived and to document which medics had arrived, ([Filing No. 61-1 at 3](); [Filing No. 61-3 at 11]()–13, 20; [Filing No. 61-5 at 8]()–10, 13, 27–28, 50; [Filing No. 61-2]() (Certified Audio Track 5 at 01:32-01:37)).

      IMPD Officer Daniel Greenwell ("Officer Greenwell") traveled to the scene to offer officer assistance. Upon arrival, he observed Officer Parker standing in the driveway with Seay who was sitting on the driveway in handcuffs, and an ambulance was at the scene. At that point, the medical personnel were inside the house. Officer Greenwell agreed to stay with Seay while Officer Parker checked on what was going on inside the house ([Filing No. 61-6 at 5]()–6, 9–10).

      Seay told Officer Greenwell that he was having trouble breathing, so Officer Greenwell yelled for Officer Parker, who was inside the house, and told him to have the medics come outside to check on Seay. Officer Greenwell did not notice that Seay's breathing was labored, but he still asked the medics to check on Seay. One of the medics came out to check on Seay after Seay told Officer Greenwell that he was having trouble breathing ([Filing No. 61-6 at 12]()–15).

      Soon after Paramedic Powers arrived at the scene, she learned that they needed a second ambulance because Seay and the woman inside the house both needed to be transported, and they could not be transported in the same ambulance. While EMT Keltner was inside the house with Paramedic Powers, an officer informed them that Seay was having trouble breathing. EMT Keltner then exited the house to check on Seay. A second ambulance was then requested. Paramedic Powers recalls asking the officers to request a second transport. Officer Parker and

3

Officer Greenwell recalls the medics requesting a second ambulance (Filing No. 61-5 at 15–16, 32–33, 52; Filing No. 61-3 at 12–13; Filing No. 61-6 at 14). The certified audio recording of the events confirms that a second ambulance was requested by a 911 dispatcher while officers were in route to the scene (Filing No. 61-1 at 3; Filing No. 61-2 (Certified Audio Track 3)).

The second ambulance was dispatched to the scene a few minutes after Paramedic Powers and EMT Keltner arrived at the scene. The second ambulance, Medic 44, was dispatched at 9:02 p.m., and it arrived at the scene at 9:10 p.m.  Less than a minute later, these medics were attending to Seay (Filing No. 61-5 at 24–25, 40–42; Filing No. 1-2 at 69). The medics from the second ambulance placed Seay on a gurney and placed him inside the ambulance.  Because Seay was under arrest, an officer would need to follow the ambulance to the hospital (Filing No. 61-6 at 12, 16).

At approximately 9:16 p.m., Officer Parker informed control dispatchers that Medic 44 would be transporting Seay.  At 9:23 p.m. Officer Parker informed control dispatchers that he would be following Medic 44 to the hospital.  However, the medics did not leave the scene after Seay was loaded into the ambulance.  When Officer Greenwell went to check on Seay, he learned that Seay went into cardiac arrest inside the ambulance, and the medics were working on him. Seay was pronounced dead shortly thereafter (Filing No. 61-1 at 3–4; Filing No. 61-3 at 22, 24–25; Filing No. 61-4 at 17; Filing No. 61-6 at 16; Filing No. 61-2 (Certified Audio Track 5 at 02:00-02:16)).

Seay's cardiac arrest did not occur before Medic 44 arrived at the scene; rather, his cardiac arrest occurred after Medic 44 arrived.  Paramedic Powers knew that Seay did not go into cardiac arrest before Medic 44 arrived because she would have been outside with Seay had that happened. And medics immediately took control of Seay when Medic 44 arrived, and they placed him in the

4

ambulance. When the medics took control of Seay, Officer Greenwell stepped back and gave them space to work (Filing No. 1-2 at 71; Filing No. 61-5 at 25–27, 44; Filing No. 61-6 at 12–13, 16). Officer Parker relied on the medics to provide care to Seay because "they're the medical people. Like when he told me he couldn't breathe, I got medics." (Filing No. 61-3 at 23.)

Officers Parker, Greenwell, and Baker did not know Seay's medical needs or the seriousness of his medical needs before he was loaded in the ambulance. They also did not know what medical treatment Seay requested before he was loaded into the ambulance. Instead, they relied on the medical personnel at the scene to provide Seay with medical care because they are medical professionals, and the police officers had no reason to believe that they were not providing Seay with any necessary medical treatment (Filing No. 61-7 at 1; Filing No. 61-8 at 1; Filing No. 61-9 at 1).

At the time when Seay was loaded into the ambulance, there were only three police officers at 4126 Balboa Drive: Officers Parker, Greenwell, and Baker (Filing No. 61-6 at 5, 23; Filing No. 61-3 at 6; Filing No. 61-4 at 14–15). The remaining police officers who are defendants in this case—Robert Rennaker, Thomas Shaffer, William Fishburn, Sandra Storkman, Erika Jones, Joshua Hasseld, Shawn Looper, Bradley Millikan, Michael Bruin, and Edward Fiscus—were not at the scene when Seay went into cardiac arrest in the ambulance, and these police officers were not in a position to provide Seay with any medical care before he went into cardiac arrest (Filing No. 61-10 at 1–2; Filing No. 61-11 at 1–2; Filing No. 61-12 at 1–2; Filing No. 61-13 at 1–2; Filing No. 61-14 at 1–2; Filing No. 61-15 at 1–2; Filing No. 61-16 at 1–2; Filing No. 61-17 at 1–2; Filing No. 61-18 at 1–2; Filing No. 61-19 at 1–2).

B.     **Procedural Background**

On January 5, 2018, *pro se* Plaintiff filed a Complaint in state court and submitted proposed summonses as to the City of Indianapolis and four additional parties not named as defendants in Plaintiff's Amended Complaint (Filing No. 1-2 at 4, 86–95). The caption of Plaintiff's Complaint listed the defendants as the City of Indianapolis, IMPD, Troy Riggs, Bryan Roach, Detective Mahoney, and DP Report Recorded Police Officers. *Id.* at 4. The police officers named as defendants in the Amended Complaint did not receive notice of Plaintiff's original Complaint (Filing No. 61-7 at 1; Filing No. 61-8 at 1; Filing No. 61-9 at 1; Filing No. 61-10 at 1–2; Filing No. 61-11 at 1–2; Filing No. 61-12 at 1–2; Filing No. 61-13 at 1–2; Filing No. 61-14 at 1–2; Filing No. 61-15 at 1–2; Filing No. 61-16 at 1–2; Filing No. 61-17 at 1–2; Filing No. 61-18 at 1–2; Filing No. 61-19 at 1–2). The police officers named as defendants in the Amended Complaint were not served or put on notice of Plaintiff's claims until Plaintiff filed her Amended Complaint on October 12, 2018 (Filing No. 27).

On January 19, 2018, Plaintiff's state court action was removed to this Court (Filing No. 1). Then on May 23, 2018, counsel was recruited and appointed to represent Plaintiff in the action (Filing No. 15). Recruited counsel assisted with preliminary litigation matters, including filing a motion for leave to amend the Complaint. The Court granted leave to amend, and the Amended Complaint was filed on October 12, 2018, specifying by name the police officer defendants and removing as defendants IMPD, Troy Riggs, Bryan Roach, and Detective Mahoney (Filing No. 27). The Amended Complaint asserted a claim for negligence and wrongful death against the City of Indianapolis and a Fourth Amendment claim against the police officer defendants for an unreasonable response to Seay's medical needs. *Id.* at 2–5. Defense counsel accepted service on behalf of each of the Defendants (Filing No. 30).

The Defendants filed an Answer to the Amended Complaint (Filing No. 33), and then the parties participated in a settlement conference on March 4, 2019, but a settlement agreement was not reached (Filing No. 51). With the agreement of Plaintiff, recruited counsel moved to withdraw his appearance (Filing No. 59), which the Court granted on June 6, 2019, thereby restoring the Plaintiff's status as a *pro se* litigant (Filing No. 63). The Defendants filed their Motion for Summary Judgment on June 5, 2019, arguing that they are entitled to judgment as a matter of law on Plaintiff's two claims. Plaintiff filed her Response in opposition on June13, 2019, (Filing No. 67), and Defendants replied shortly thereafter. (Filing No. 71.) The Motion is now ripe for consideration.

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific

factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court notes that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

> However, it is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (internal citations and quotation marks omitted).

### III. DISCUSSION

The Defendants contend summary judgment is appropriate because Plaintiff's claims do not have evidentiary or legal support. First, they argue that the police officer defendants were not

timely named and properly served before the statute of limitations expired. Second, they assert qualified immunity protects them against Plaintiff's federal claim, and the Indiana Tort Claims Act provides immunity against the state law claim for negligence and wrongful death. The Court will address each of these arguments in turn.

**A.      Timely Service and Statute of Limitations**

Under federal law, a plaintiff may name a fictitious defendant and utilize discovery to learn the defendant's proper identity. *Mancini v. City of Indianapolis*, 2018 U.S. Dist. LEXIS 167575, at *24 (S.D. Ind. Sep. 28, 2018). While "there is no prohibition on filing suit against unknown defendants, John Doe defendants must be identified and served within 120 days of the commencement of the action against them." *Id.* (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . ."[1]).

The Defendants point out that Plaintiff brought her claims against the City of Indianapolis and police officers who are not a party to Plaintiff's Amended Complaint on January 5, 2018. They argue, if there were unknown police officers who Plaintiff wanted to name as defendants, she had until May 5, 2018, to identify those unknown officers, name them in Plaintiff's Amended Complaint, and serve them. Yet Plaintiff did not move for leave to amend the Complaint until September 20, 2018, which is months after the deadline for serving unknown police officers had expired. The police officer defendants did not receive notice of Plaintiff's initial Complaint; they

---

[1] The Court notes that, prior to amendment, Rule 4(m) provided 120 days for service.

were first served and put on notice of Plaintiff's claims when she filed her Amended Complaint on October 12, 2018. Therefore, the Defendants argue, the claim against the police officer defendants must be dismissed.

*Pro se* Plaintiff did not respond to the Defendants' argument concerning Rule 4(m) and the timing of service on the police officer defendants. Where a defendant has not been served within ninety days of the complaint being filed, Rule 4(m) directs courts to dismiss the action without prejudice against the defendant or order service to be made within a specified time. The Rule also directs courts to extend the time for service for an appropriate period if the plaintiff shows good cause for failing to effectuate service. The Defendants point to *Mancini*, and in that case, "[m]ore than 120 days ha[d] passed since the filing of Plaintiff's Complaint, and the unknown defendants ha[d] not been identified or served. Accordingly, the Doe and Roe defendants [were] dismissed without prejudice." *Mancini*, 2018 U.S. Dist. LEXIS 167575, at *24.

The Court notes that this case is not like *Mancini*. There, the unknown/unidentified defendants were never identified and were never served. Thus, the court dismissed the claims against them without prejudice. In this case, the police officer defendants have been identified, they have been named in the Amended Complaint, and they have been served. It would be futile in this case to, based on Rule 4(m), dismiss without prejudice the claim against the police officer defendants where they have been served and have defended against the claim brought against them. Thus, the Court concludes that summary judgment is not appropriate on the basis of Rule 4(m) and timely service.

Next, the Defendants argue that the statute of limitations governing a Section 1983 claim is "the periods of limitations adopted by the states for personal-injury suits." *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). In

Indiana, claims concerning personal injury "must be commenced within two (2) years after the cause of action accrues." Ind. Code § 34-11-2-4. "A Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action." *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). The Defendants assert that Plaintiff's claim accrued no later than January 15, 2016, because the Plaintiff knew or had reason to know of the injury that is the basis of this action on that date. Thus, the Defendants contend, the statute of limitations on the Section 1983 claim expired no later than January 15, 2018. Yet Plaintiff filed her Amended Complaint naming the police officer defendants as parties for the first time on October 12, 2018—280 days after the statute of limitations expired. They argue that Plaintiff's claim against the police officer defendants must be dismissed because it is time-barred.

Additionally, the Defendants assert, Plaintiff's belated claims against the police officer defendants do not relate back to the filing of Plaintiff's original Complaint because there was no mistake as to the identification of the police officer defendants. Federal Rule of Civil Procedure 15(c) provides that an amended pleading relates back to the original pleading if it arises "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. Proc. 15(c)(1)(B). However, when the proposed amendment changes the party against whom the claims are asserted, the plaintiff must additionally show that the new defendant timely received notice of the original lawsuit and that the defendant knew, "but for a mistake concerning the proper party's identity" that it should have been named in the original action. Fed. R. Civ. Proc 15(c)(1)(C).

The Defendants argue the Seventh Circuit has held that plaintiffs must show both that an error was made concerning the proper party and that the new party is chargeable with knowledge of that mistake in order to change a party defendant and allow that change to relate back. *King v.*

11

*One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000).  For purposes of relation back, a mistake is narrowly defined to reach only mistakes in identity, not mistakes as to which party is or may be liable. *See Worthington v. Wilson*, 8 F.3d 1253, 1254 (7th Cir. 1993). "Rule 15(c) . . . does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Worthington*, 8 F.3d at 1256.  The Defendants maintain that Plaintiff's claim does not relate back under the relation back doctrine of Rule 15(c) because Plaintiff's failure to name the police officer defendants was not due to a mistake. Therefore, they contend, Plaintiff's claim against the police officer defendants is untimely and must be dismissed.

*Pro se* Plaintiff did not respond to the Defendants' argument concerning the statute of limitations for Section 1983 claims. The Court first reiterates that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. In support of their statute of limitations and relation back argument, the Defendants direct the Court to *Worthington*; however, the Court notes that the plaintiff in *Worthington* was represented by counsel. In this case, Plaintiff was a *pro se* litigant when she filed her original Complaint in state court, and she currently is a *pro se* litigant.  When she filed her Amended Complaint, Plaintiff was represented by recruited counsel.

The Defendants focus their statute of limitations and relation back argument on the issue of "mistake," so the Court will focus its analysis on that issue. In her original Complaint filed in state court, *pro se* Plaintiff named as defendants the City of Indianapolis, Officer Parker, Officer Baker, Officer Rennaker, Officer Greenwell, and "Defendant . . . employed by IMPD as a law enforcement officer." ([Filing No. 1-2 at 9](#)–10.) She further identified "DP Report RECORDED POLICE OFFICERS" as other defendants in the case caption of her original Complaint. *Id.* at 4.

The police report attached to the original Complaint as an exhibit identified each of the police officer defendants named in the Amended Complaint: Officers Parker, Baker, Rennaker, Greenwell, Bruin, Fishburn, Storkman, Fiscus, Looper, Jones, Millikan, Hasseld, and Shaffer. *Id.* at 24, 26. Liberally construing *pro se* Plaintiff's original Complaint, as the Court must do, *see Erickson*, 551 U.S. at 94, the Court determines that Plaintiff's mistake in failing to specify by name each of the police officer defendants in separately-paragraphed allegations and the case caption is the type of mistake that would permit for relation back to the original Complaint under Rule 15(c). Therefore, the Court concludes that *pro se* Plaintiff's Amended Complaint relates back to the filing of the original Complaint on January 5, 2018, so Plaintiff's claims asserted in the Amended Complaint are timely filed. Thus, summary judgment is not appropriate on the basis of the statute of limitations.

**B.     Federal Claim against the Police Officer Defendants**

Concerning the Section 1983 claim against the police officer defendants for allegedly violating the Fourth Amendment by unreasonably responding to Seay's medical needs, the Defendants argue that the police officer defendants are entitled to qualified immunity. Qualified immunity protects the police officer defendants from liability unless "(1) the defendant violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "A failure to show either is fatal for the plaintiff's case." *Id.* (internal citation and quotation marks omitted). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal citation and quotation marks omitted). The United States Supreme Court has "repeatedly

13

told courts not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal citation and punctuation omitted).

"Under the Fourth Amendment, a defendant is liable for providing inadequate medical care if the defendant's response to the plaintiff's medical need is objectively unreasonable." *Smith v. Adams*, 2019 WL 1542298, at \*10 (S.D. Ind. Apr. 9, 2019) (citing *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006)). Courts consider four factors when determining whether a police officer's response to a plaintiff's medical needs was objectively unreasonable: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). A plaintiff "must also show that the defendants' conduct caused the harm of which [the plaintiff] complains." *Id.*

The Defendants argue that Plaintiff cannot support any of the four factors and show that the police officer defendants' conduct caused the harm to Seay in order to support her Fourth Amendment claim. They argue that the undisputed designated evidence shows the police officer defendants did not have notice of Seay's medical needs nor did they have notice of the seriousness of Seay's medical needs. They assert the police officers were not aware of the scope of any requested treatment. Furthermore, they argue, the police officer defendants had police interests when Seay was being treated by medics at the scene, yet, none of them relied on police interests to deny or interfere with Seay's medical treatment. Rather, when the medics checked on Seay, Officer Greenwell stepped back and gave them their space, and Officer Parker relied on the medics to provide care to Seay because "they're the medical people," and when Seay told Officer Parker that he could not breathe, Officer Parker summoned medics to the scene. The police officers relied

14

on the medical personnel at the scene to provide Seay with medical care because they were the medical professionals, and the police officers had no reason to believe that the medics were not providing Seay with any necessary medical treatment. Thus, the Defendants argue, the police officers' actions were not unreasonable under the Fourth Amendment.

Pointing to the designated evidence, the Defendants further assert that the police officers' conduct did not cause the harm of which Plaintiff complains. The police officers did not delay the treatment that Seay received by even a fraction of a second. Both ambulances that responded to the scene were requested by a 911 dispatcher while the officers were in route to the scene. The first ambulance arrived within minutes of the police officers being dispatched to the scene. When that ambulance arrived, EMT Keltner headed to Seay to treat him. Paramedic Powers also observed Seay before entering the house and did not see anything that suggested he was in distress. Officer Parker told the medics that Seay was having trouble breathing. And all of this happened within the first ten minutes of officers being dispatched to the scene. The police officers did not interfere with or delay any medical treatment that Seay needed or received. Thus, there was no Fourth Amendment violation.

The Defendants additionally argue that the police officers did not violate any right that was clearly established on January 14, 2016, and none of the police officers failed to intervene in a constitutional violation on that day. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (internal citation and quotation marks omitted). Seay's rights were not violated, and thus, none of the police officer defendants may be held liable for failing to intervene in any constitutional deprivation. The Defendants point out that, in fact, ten of the thirteen police officer defendants were not even present at the scene before Seay went into cardiac arrest in the

15

ambulance. There was no opportunity to intervene in anything. The three officers who were at the scene allowed the medics to provide medical treatment and had no reason to believe that any necessary treatment was not being provided by the medics. Therefore, the Defendants argue, the police officer defendants are entitled to summary judgment on Plaintiff's Section 1983 claim.

In response to the Defendants' Motion, Plaintiff presents only argument and does not designate any evidence.[2] She asserts that police officers were called to a chaotic domestic disturbance incident where Seay cooperated with the officers and complained that he was having trouble breathing. She argues without citing to any evidence that "[w]hen paramedics arrived, Herbert was in handcuffs and Paramedics spent less than one minute with Herbert and could not perform medical tests because he was in handcuffs." (Filing No. 67 at 1.) She asserts that the police officers directed the medics into the house to help the female domestic violence victim, and argues IMPD officers failed to intervene, based on their "concern for victim women and not felon complaining of chest pains." *Id*. at 2. Plaintiff concludes that Seay could be alive today if the police officers had believed him concerning his complaint of having trouble breathing before going into cardiac arrest. *Id*.

After a review of the designated evidence, and in light of the case law governing Fourth Amendment claims for an unreasonable response to medical needs, the Court concludes that it must grant summary judgment in favor of the police officer defendants. While it is tragic that Seay died following a domestic dispute incident while he was in custody, the undisputed evidence shows that the police officers did not act unreasonably toward Seay's medical needs. The evidence

---

[2] Not only did Plaintiff fail to designate any evidence in response to the Motion for Summary Judgment, she also did not cite to any designated evidence to support her assertions. Speculation cannot defeat a summary judgment motion. *See Dorsey*, 507 F.3d at 627. Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink*, 900 F. Supp. at 1072 (citations omitted).

indicates that medics were promptly requested to the scene. When the medics arrived at the scene, they were permitted to attend to Seay, and when Seay complained of trouble breathing, the police officers asked the medics to assist. Seay always had a police officer and/or medic with him. The undisputed evidence shows that police officers stood back to allow the medical personnel to provide medical treatment to Seay. They did not interfere with any medical treatment being provided. The medics were attending to Seay when he unfortunately went into cardiac arrest in the back of the ambulance. Based on the designated evidence before the Court, there is nothing about the police officers' conduct that could be viewed as objectively unreasonable to rise to the level of a constitutional violation. Therefore, Plaintiff's Section 1983 claim cannot survive summary judgment, and the police officer defendants are entitled to qualified immunity against the claim. It therefore follows that any failure to intervene claim also cannot survive summary judgment.

### C.    State Law Claim against the City of Indianapolis

The Defendants argue that the state law claim for negligence and wrongful death should be dismissed because of statutory immunity. The Indiana Tort Claims Act ("ITCA") "governs tort claims against governmental entities and public employees." *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014); Ind. Code § 34-13-3. Pursuant to the ITCA, a governmental defendant is personally immune from liability for conduct taken within the scope of his employment. Ind. Code § 34-13-3-5(b). Thus, the Defendants assert, only the City of Indianapolis may be held liable for Plaintiff's state law claims on a theory of *respondeat superior*. *See Ballheimer v. Batts*, 2019 WL 1243061 at *12 (S.D. Ind. March 18, 2019).

Regarding Indiana Code § 34-13-3-3(8), commonly referred to as "law enforcement immunity," the Indiana Supreme Court has said that "what is required to establish immunity is that

17

the activity be one in which government either compels obedience to laws, rules, or regulations or sanctions or attempts to sanction violations thereof." *F.D. v. Ind. Dep't of Child Serv.*, 1 N.E.3d 131, 138 (Ind. 2013) (internal citation and punctuation omitted). There are only limited exceptions to the ITCA's law enforcement immunity; for example, the City of Indianapolis and its police officers are not immune from suit if the enforcement of or failure to enforce the law constitutes false arrest or false imprisonment. *Id.*

The Defendants argue that under the ITCA, the City of Indianapolis and its employees acting within the scope of their employment generally are not liable if a loss results from the enforcement of or failure to enforce the law. Defendants point out that the police officers who were present at 4126 Balboa Drive (Officers Parker, Baker, and Greenwell) were investigating criminal conduct when Seay was receiving medical treatment at the scene. The police officers were dispatched to respond to an allegation that a suspect had committed domestic battery, and they were exposed to evidence that gave them probable cause to believe that Seay had battered someone. Because the police officers clearly were attempting to enforce the law, the City of Indianapolis and its police officers are immune from suit on Plaintiff's negligence claim under Indiana Code § 34-13-3-3(8). Additionally, the Defendants point out that "[l]aw enforcement immunity under the ITCA applies to [an] Estate's wrongful death claim." *Cento v. Marion Cty. Sheriff's Office*, 2018 WL 3872221, at *5 (S.D. Ind. Aug. 15, 2018). Thus, Plaintiff's wrongful death claim is statutorily barred.

*Pro se* Plaintiff did not respond to the Defendants' argument concerning statutory immunity against her state law claim. The undisputed designated evidence shows that the police officer defendants were acting within the scope of their employment when they responded to the reported domestic dispute involving Seay. Their actions and interactions with Seay involved the

enforcement of the law. Therefore, the ITCA applies, and law enforcement immunity under Indiana Code § 34-13-3-3(8) protects the City of Indianapolis and its police officers against Plaintiff's state law claim for negligence and wrongful death. The law and the facts favor the Defendants, so the Court must **grant** their Motion for Summary Judgment on Plaintiff's state law claims for negligence and wrongful death.

## IV.     CONCLUSION

For the reasons explained above, the Defendants' Motion for Summary Judgment, (Filing No. 60), is **GRANTED**, and Plaintiff Tamie Seay's claims are **dismissed**. The trial and final pretrial conference are hereby **vacated**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 11/16/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Tamie Seay
9933 Fulbrook Drive
Indianapolis, Indiana  46229

Tara Lynn Gerber
CITY OF INDIANAPOLIS – OFFICE OF CORPORATION COUNSEL
tara.gerber@indy.gov

Andrew J. Upchurch
CITY OF INDIANAPOLIS – OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL
BEMIS DUNCAN & MERCHANT, LLP
ard@rkblegalgroup.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL
BEMIS DUNCAN & MERCHANT, LLP
jfk@rkblegalgroup.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL
BEMIS DUNCAN & MERCHANT, LLP
ejm@rkblegalgroup.com